**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**MARGARITA SHERRILL, TONY FALSO, SIMUEL**
**BROWN, LESLIE SWITZER, JON STEWART,**
**MICHAEL PIAZZA, JETHRO BURCH, GEORGIA**
**BECKER, TIYASHIA ISAAC and JOHN WAUDBY**
*on behalf of themselves and all other employees similarly*
*situated,*

**No. 05-CV-6537L(P)**

*Plaintiffs,*

**v.**

**SUTHERLAND GLOBAL SERVICES, INC.; THE**
**SUTHERLAND GROUP LTD.;**

*Defendants.*

**PLAINTIFFS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR NOTICE TO AFFECTED EMPLOYEES**

**STANLEY J. MATUSZ, ESQ.**
*Attorneys for Plaintiffs*
161 Rutgers Street
Rochester, NY 14607
(585) 271-5460

Of Counsel:    Stanley J. Matusz, Esq.

## PRELIMINARY STATEMENT

Named Plaintiffs Margarita Sherrill, Tony Falso, Simuel Brown, Leslie Switzer, Jon Stewart, Michael Piazza, Jethro Burch, Georgia Becker, Tiyashia Isaac and John Waudby ("Named Plaintiffs") filed this action against Sutherland Global Services Inc. and The Sutherland Group ("Sutherland") as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. Section §216(b), and as class action under F.R.C.P. 23 for violations of the New York Labor Law. [1] (Complaint ¶ 1). [2]  Plaintiffs now seek to send FLSA notice to employees affected by the following Sutherland pay policies:

> **AUTOMATIC DEDUCTION POLICY**:  Sutherland maintained a policy of subjecting current and former hourly employees to automatic deductions for lunch breaks even when they worked through all or part of their lunch.

> **OFF-THE-CLOCK WORK**:  Sutherland systematically failed to pay current and former hourly employees for the time they spent performing work duties before their regularly scheduled working hours.

> **FAILURE TO INCLUDE COMMISSIONS AND BONUSES IN OVERTIME COMPUTATION:** Sutherland improperly failed to include commissions and bonuses in calculating the employee's regular rate of pay for overtime purposes.

Specifically, plaintiffs seek an Order:

1.  requiring the issuance of an expedited notice to all current and former hourly employees of Sutherland who defense counsel, as an officer of this Court, has determined worked for Sutherland since October 11, 2002;

2.  requiring Sutherland to provide to plaintiffs' counsel a list both electronically (in an Excel spreadsheet with each item of the employee's name and address designated as a separate field) and by hard copy, of all current and former hourly employees, including their current or last known address, phone number and e-mail address within 15 days of the issuance of the order;

3.  requiring Sutherland to post notices and opt-in forms in a conspicuous place (such as break rooms or other such locations) at its locations for a period of 90 days where employees can see such notices;

---

[1]  Plaintiffs' request for Determination of Class Issues Pursuant to F.R.C.P. 23 will be made pursuant to a subsequent motion.
[2]  References to "Complaint ¶ __" are the Amended Complaint and Demand for Jury Trial.

4.      requiring Sutherland to e-mail such notices to current employees;

5.      requiring Sutherland to publicize such notice three times in Sutherland's employee newsletter or other employee communications; and

6.      granting such other relief as this Court deems just and proper.

## FACTS

Sutherland operates and/or has operated call centers in various locations in Western and Central New York, San Diego, California, and Virginia Beach, Virginia.  (Complaint ¶ 15; Answer ¶ 15)[3].  Sutherland has maintained several long-standing policies that wrongfully deny regular and overtime pay to its hourly call center employees who worked over forty (40) per week.   (Complaint ¶ 13).  The complaint seeks to recover unpaid overtime and wages on behalf of all current and former hourly employees impacted by Sutherland's illegal pay polices.  (Id.).

Sutherland's employees have identified at least three company-wide policies which were used to systematically deprive employees of statutorily required overtime and wage payments:

### A.      *Automatic Deduction Policy*

Sutherland has a longstanding policy of automatically deducting hour lunch breaks from employee pay without regard to whether the employee performed work during all or part of that lunch break.   (Shelley Aff. ¶¶ 3-6;[4] R. Brown Aff. ¶¶ 4-6;[5] Sherrill Aff. ¶¶ 3-8;[6] Waudby Aff. ¶¶ 5-14;[7] Stewart Aff. ¶¶ 3-5;[8] S. Brown Aff. ¶¶ 4-9;[9] Piazza Aff. ¶¶ 4-8[10]).  This automatic deduction

---

[3]       References to "Answer ¶ _" are to Sutherland's Amended Answer, filed April 13, 2006.
[4]       References herein to "Shelley Aff. ¶ _" are to the accompanying Affirmation of Nicole Shelley, dated November 13, 2006.
[5]       References herein to "R. Brown Aff. ¶ _" are to the accompanying Affirmation of Ruth Brown, dated November 18, 2006.
[6]       References herein to "Sherrill Aff. ¶ _" are to the accompanying Affirmation of Margarita Sherrill, dated November 21, 2006.
[7]       References herein to "Waudby Aff. ¶ _" are to the accompanying Affirmation of John Waudby, dated November 22, 2006.
[8]       References herein to "Stewart Aff. ¶ _" are to the accompanying Affirmation of Jon Stewart, dated November 22, 2006.

policy was in effect at each of Sutherland's locations going back through the year 1999.  (Shelley Aff. ¶¶ 2, 3-6; R. Brown Aff. ¶¶ 2, 4-6; Sherrill Aff. ¶¶ 2, 3-8; Waudby Aff. ¶¶ 2, 5-14; Stewart Aff. ¶¶ 2, 3-5; S. Brown Aff. ¶¶ 2, 4-9; Piazza Aff. ¶¶ 2; 4-8).

Employees at each of Sutherland's locations routinely worked through all or part of their lunches handling in or outbound calls, and other tasks.   (Shelley Aff. ¶¶ 3-6; R. Brown Aff. ¶¶ 4-6; Sherrill Aff. ¶¶ 3-8; Waudby Aff. ¶¶ 5-14; Stewart Aff. Aff. ¶¶ 3-5; S. Brown ¶¶ 2, 4-9;  Piazza Aff. ¶¶ 4-8).  This was an experience common to all hourly employees.  (Id.).  There was strong pressure employed by Sutherland to maintain phone productivity, generate sales, make calls within a certain time period, meet phone hours criteria allegedly imposed by clients, and/or make various sales quotas, (Shelley Aff. ¶ 4; R. Brown Aff. ¶ 4; Sherrill Aff. ¶ 3; Waudby Aff. ¶¶ 5-14; Stewart Aff. Aff. ¶¶ 3-5; S. Brown ¶ 5; Piazza Aff. ¶ 5), and Sutherland's managers and management knew employees routinely worked for all or part of their lunches.  (Shelley Aff. ¶ 4; R. Brown Aff. ¶ 5; Sherrill Aff. ¶ 3; Waudby Aff. ¶¶ 6, 8,9; S. Brown ¶ 6-8;  Piazza Aff. ¶ 5).

Sutherland time records confirm that the auto-deduction policy was in place at all of its locations.  Records for some thirty (30) former Sutherland employees from its various locations show that Sutherland used its timekeeping system ("Kronos") to automatically and systematically deduct one hour of time from each employee's work day.  (*See*, Id.; Matusz Aff. ¶ 10[11]).

Sutherland had the technological ability to allow employees to punch-in and punch-out for lunches in a way that would accurately account for actual hours worked.  (Shelley Aff. ¶ 6; Sherrill Aff. ¶ 6; Waudby Aff. ¶ 12; S. Brown Aff. ¶ 9; Stewart Aff. ¶ 5; Piazza Aff. ¶ 8).  Sutherland instead instructed employees to <u>not</u> sign out or in for lunches.  (Shelley Aff. ¶ 6; Sherrill Aff. ¶ 6; Waudby

---

[9]       References herein to "S. Brown Aff. ¶ _" are to the accompanying Affirmation of Simuel Brown, dated November 20, 2006).

[10]      References herein to "Piazza Aff. ¶ _" are to the accompanying Affirmation of Michael Piazza, dated November 22, 2006).

[11]      References herein to "Matusz Aff. ¶ _" are to the accompanying Affirmation of Stanley J. Matusz, dated November 22, 2006).

Aff. ¶ 12; S. Brown Aff. ¶ 9; Piazza Aff. ¶ 8).  They used the automatic deduction policy to avoid payment of significant  overtime to its hourly employees at all of its locations over a period of more than six years.

###    B.    *Off-the-Clock Work*

Sutherland call center employees routinely arrived to work fifteen (15) to more than thirty (30) minutes prior to the start of their shift.  (Shelley Aff. ¶ 7; R. Brown Aff. ¶ 7; Sherrill Aff. ¶ 9; Waudby Aff. ¶ 15, 17; Stewart Aff. ¶ 6; S. Brown Aff. ¶ 10; Piazza Aff. ¶¶ 9).  Employees were required or encouraged to arrive early to fill-out paperwork, sign on to the computer, review work emails, review and rehearse sales scripts, check third-party verifications, and/or to spend time signing onto the Kronos system.  (Shelley Aff. ¶¶ 7-9; R. Brown Aff. ¶ 8; Sherrill Aff. ¶¶ 9-10; Waudby Aff. ¶¶ 15-19; Stewart Aff. ¶¶ 6-7;  S. Brown Aff. ¶¶ 10-13; Piazza Aff. ¶¶ 9-10).  Although Sutherland management was aware that employees worked prior to the start of their shift, Sutherland instructed employees not to sign on to Kronos until it was near the official start time of their shift.  (Shelley Aff. ¶ 8; R. Brown Aff. ¶¶ 8-9; Sherrill Aff. ¶ 10; Waudby Aff. ¶ 17; Stewart Aff. ¶ 6-7;  S. Brown Aff. ¶ 11-12; Piazza Aff. ¶ 10).  Sutherland's time records verify that employees were deprived of pay for this time because they were compensated only for the work time spent after they signed onto Kronos. (Matusz Aff. ¶ 14).  Sutherland knew its employees were constantly arriving early, but deliberately made no attempt to compensate employees for this time.

###    C.    *Failure to Include Commissions in Overtime Calculation*

To calculate overtime properly, Department of Labor regulations instruct that commissions and bonuses paid need to be calculated into the employees' regular rate—the rate from which the time and one-half calculation is made.  *See*, 29 C.F.R. § 778.120; 29 C.F.R. § 778.119.  By way of example, and to illustrate how this would work, if an employee's regular rate of pay in a forty (40) hour week is $10.00 per hour, his/her overtime rate is 1.5 x $10.00 = $15.00.  However, if the

employee earns $100 commission, the commission must be added into the calculation of the regular rate. That employee's regular rate would be calculated by dividing the total compensation earned, plus commissions, by forty (40) hours. In this example, if $100 in commissions were earned, the employee's regular rate would be $12.50. Thus, the overtime rate would be $18.75 (1.5 x $12.50).

Sutherland's wage policies never factored an employee's commissions and bonuses into their overtime rate calculations. (Shelley Aff. ¶¶ 7-9; R. Brown Aff. ¶¶ 7-10; Sherrill Aff. ¶¶ 9-10; Waudby Aff. ¶¶ 15-19; Stewart Aff. ¶¶ 6-7; S. Brown Aff. ¶¶ 14-15). Sutherland pay records for employees who earned commissions and worked overtime verify that the company never accounted for commissions in their overtime rate calculations. (Matusz Aff. ¶ 20). This policy was in effect at all Sutherland locations. (Id.).

## ARGUMENT

**I.     THE COURT'S ROLE IN NOTIFYING EMPLOYEES OF THEIR RIGHT TO OPT-IN TO THIS FLSA LAWSUIT.**

### A.     *Expedited Notice Is Required Under the FLSA.*

When the FLSA was enacted in the 1930s, Congress thought it was important to create a mechanism by which employees who alleged violations under the FLSA could have their claims adjudicated in one lawsuit. Therefore, the FLSA created a precursor of Rule 23 with its "collective action" provision. 29 U.S.C. § 216(b). Under the FLSA, the employee must affirmatively "opt-in" to the lawsuit, but once he or she does so, his or her case is part of the class-wide allegations in the lawsuit.

The Second Circuit has long held that the interests of both the parties and the courts are best served if plaintiffs' FLSA claims are heard in one lawsuit. *Braunstein v. Eastern Photographic Labs.*, 600 F.2d 335, 336 (2d Cir. 1978)(per curiam), *cert. denied*, 441 U.S. 944 (1979). Further, the Supreme Court adopted the views of the Second Circuit and encouraged the use of notice as being in

the best interests of the parties involved. *Hoffman-LaRoche, Inc., v. Sperling*, 493 U.S. 165, 170 (1989)("[a] collective action allows ... plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources" and serves the equally important judicial interest of "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity.")  This Court wrote,

> A collective action allows…plaintiffs to take advantage of lower individual costs to vindicate rights by the pooling of resources.  The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity….  Notice plays an important role in facilitating a collective action and furthers [the statute's] remedial purposes.

*Rehwaldt v. Elec. Data Systems Corp.*, 1996 WL 947568, *3 (W.D.N.Y.)(*citing Jackson v. N.Y. Tel. Co.*, 163 F.R.D. 429 (S.D.N.Y. 1995)).

Second, **expedited notice** is required because of the FLSA's statute of limitations.  The statute of limitations covers the last three (or two) years of an employee's paychecks.  Therefore, an injured employee loses forever his right to recover under the FLSA on illegal paychecks more than three years old.  As then-District, now Circuit, Judge Sotomayor explained, expedited notice is essential because an injured employee's claims "die daily" if they do not opt-in to the lawsuit. *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997).

### B. Notice Is Required Once Plaintiffs Present "Modest" Allegations of Other Similarly Situated Employees.

If there are potentially "similarly situated" employees, class-wide notice is appropriate. *Hoffman-LaRoche, Inc.*, 493 U.S. at 168-69.  Perhaps because of the importance of expedited notice, the requirements to demonstrate the existence of possibly "similarly situated" employees are minimal.  *See Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005) (Larimer, J.) ("'A plaintiff's burden [at this stage] is minimal, especially since the determination that potential plaintiffs are similarly situated is merely a preliminary one.'")(*quoting Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d at 104 and *Hoffman*, 982 F. Supp. at 261)); *Brychnalski v. Unesco, Inc.*, 35 F. Supp.2d 351, 353 (S.D.N.Y.

1999); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 95-96 (S.D.N.Y. 2003); *Realite v. Ark Restaurants Corp.*, 7 F. Supp.2d 303, 307-308 (S.D.N.Y. 1998); *Hoffman*, 982 F. Supp. at 249; *Rehwaldt*, 1996 WL 947568, at *5 (W.D.N.Y.); *Schwed v. Gen. Elec. Co.*, 159 F.R.D. 373, 375 (N.D.N.Y. 1995); *Palmer v. Reader's Digest Association, Inc.*, 1986 WL 324 (S.D.N.Y.); *Frank v. Capital Cities Communications, Inc.*, 88 F.R.D. 674, 676 (S.D.N.Y. 1981).

The Court's obligation in deciding to certify a collective action under the FLSA was recently summarized by this Court in *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)(Larimer, J.):

> In the early phase, courts employ a relatively lenient evidentiary standard in determining whether a collective action is appropriate. "At the notice stage, courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination. [*Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1213-24 (5th Cir. 1995)]. To demonstrate that other potential plaintiffs are similarly situated to him, then, a plaintiff must only make a "modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)(citations omitted). "A plaintiff's burden [at this stage] is minimal, especially since the 'determination that potential plaintiffs are similarly situated' is a 'preliminary' one." *Gjurovich v. Emmanuel's Marketplace, Inc.* 282 F.Supp.2d at 104 (*quoting, Hoffman*, 982, F.Supp. at 261).

*Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005).

In making the determination to send out notice, the court does not examine the underlying merits of the action. *See, Scholtisek v. Eldre Corp.*, 229 F.R.D. 381 (W.D.N.Y. 2005) (Larimer, J.)("merits of plaintiff's claims… are not relevant at this stage."); *Rehwaldt*, 1996 WL 947568, at *4; *Realite*, 7 F. Supp.2d at 308. Nor does it matter that the notified employees may or may not ultimately be found to be similarly situated. *Id.* Nor do the employment situations or claims of the notified employees need to be the same. Courts send out notice to employees allegedly affected by the same policy regardless of their job titles, location within the company, or reporting relationships: "Class treatment under the [statute] is not defeated simply because, as here, the plaintiffs performed a variety of jobs in a number of departments at different locations." *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988). A "finding of similarly situated does not require the plaintiffs to perform the same job in the same

location as long as there is a discriminatory policy common to all." *Abrams v. Gen. Elec. Co.*, 1996 WL 663889, at *2 (N.D.N.Y); *Jackson*, 163 F.R.D. at 432. Even if all the named plaintiffs were employed by the same department, as long as the plaintiffs allege the same policy effected other employees elsewhere, notice to employees in the corporation's other units and operations is warranted. *Schwed*, 159 F.R.D. at 377; *Hoffman*, 982 F. Supp. at 264 (notice appropriate to all current and former managers and co-managers, or persons holding equivalent positions, however titled, who worked overtime and were not paid, rejecting defendant's attempts at a narrower range) (Sotomayor, J.). The plaintiff must simply allege a factual nexus between the employees and the alleged policy. *Realite*, 7 F. Supp.2d at 308 (notice appropriate because affidavits "indicate" same policy was in effect at other locations) (Sotomayor, J.).

Discovery can also be conducted more efficiently if the notice is sent early, regardless of the ultimate merits of the claim. As cited by this Court,

> Defendants' argument [against pre-discovery notice] is that the "plaintiffs' claims may be shown in the crucible of discovery to be weak, if not meritless," in which case no notice should be sent. The answer is that the experiences of other employees may well be probative of the existence *vel non* of a discriminatory policy, thereby affecting the merits of plaintiffs' own claims; and the notice machinery contemplated by the [statute], by reaching out to potential plaintiffs, may further the statute's remedial purpose.

*Rehwaldt*, 1996 WL 947568, at *4 (*quoting Frank*, 88 F.R.D. at 676); *Realite*, 7 F. Supp.2d at 308 ("I am not holding at this time that all members of the proposed class who will be sent notices are, in fact, similarly situated…. I may later decertify the class, or divide the class into subgroups…. However, at this early juncture … principles of efficiency and judicial economy militate in favor of maintaining this action as a collective one, and waiting to see what the facts bear out.") (Sotomayor, J.).

Finally, as part of the notification process, the defendant is required to immediately (often within 15 days or shorter) turn over the names and last known addresses of the potential opt-ins. *Hoffman-LaRoche, Inc.*, 493 U.S. at 170 ("District Court was correct to permit discovery of the names and addresses...."); *Brzychnalski v. UNESCO*, 35 F. Supp.2d 351, 353 (S.D.N.Y. 1999); *Realite*, 7 F. Supp.2d at 309-10; *Jackson*, 163 F.R.D. at 432-33; *Rehwaldt*, 1996 WL 947568, at *8; *Schwed*, 159 F.R.D. at

378. Because the information is likely stored on a computer database, to facilitate notice, plaintiff requests the production in both electronic (in a readily readable format) and hard copy format.

      **C.**    ***Plaintiffs Present More Than The Minimal Showing Required; Notice Should Be Sent To Other Employees.***

Plaintiffs have presented overwhelming evidence to meet the liberal standard for notification to these similarly situated hourly employees of Sutherland. Sutherland has maintained at least three company-wide policies that deprive hourly employees of overtime and regular wages. Sutherland automatically deducted time for lunch breaks and did not pay for interrupted lunches. (Shelley Aff. ¶¶ 3-6; R. Brown Aff. ¶¶ 4-6; Sherrill Aff. ¶¶ 3-8; Waudby Aff. ¶¶ 5-14; Stewart Aff. Aff. ¶¶ 3-5; S. Brown Aff. ¶¶ 4-9; Piazza Aff. ¶¶ 4-8). Sutherland systematically deprived employees of overtime and wages by instructing employees to not sign on to the Kronos timekeeping system until it was near the start of their shift despite the fact that employees regularly worked for 15-30 minutes prior to their shift checking emails from the company and co-workers, reviewing paperwork, logging onto the computerized timekeeping system, taking alarm tickets, logging on to the phone system, reviewing and memorizing scripts used on calls, checking third-party verifications, and other tasks. (Shelley Aff. ¶¶ 7-9; R. Brown Aff. ¶¶ 7-10; Sherrill Aff. ¶¶ 9-10; Waudby Aff. ¶¶ 15-19; Stewart Aff. ¶¶ 6-7; S. Brown Aff. ¶¶ 10-13; Piazza Aff. ¶¶ 4-8). Finally, Sutherland deprived its employees of overtime by failing to account for commission and bonus payments in the regular rate calculation for employees who earned commissions. (Shelley Aff. ¶¶ 7-9; R. Brown Aff. ¶¶ 7-10; Sherrill Aff. ¶¶ 9-10; Waudby Aff. ¶¶ 15-19; Stewart Aff. ¶¶ 6-7; S. Brown Aff. ¶¶ 14-15).

There is no question that certification of a collective action is required in these circumstances. This court recently certified an FLSA collective action in an action that also involved automatic deduction policies. *See, Barrus, et al. v. Dick's Sporting Goods, Inc.*, 05-CV-6253(Siragusa, J.). Like Sutherland, the employer in that case also utilized Kronos as a timekeeping

system.  In *Barrus*, the Court said that the "potential plaintiffs are similarly situated, in part, because all used defendants' Kronos computer system for timekeeping…"  *Id.* at pg. 7 n.1.

Sutherland used this system to automatically deduct an hour of time per each employee each day, regardless of whether they worked all or part of that time.  Sutherland also used Kronos to ensure that employees were not paid prior to the start of their shift.  Finally, Sutherland failed to adjust overtime computations to account for commissions and bonuses paid.  Sutherland's use of these policies extended to all its nonexempt employees at its call centers.  Consequently, it is appropriate to send notice to all potentially affected employees.

### D.     The Proposed Notice Should Be Fair and Adequate.

As discussed above, a collective action depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."  *Hoffman-LaRoche, Inc.*, 493 U.S. at 170. 172.  The court-authorized notice prevents "misleading communications," such as is often unilaterally disseminated by defendants.  *Id*. at 172.

Plaintiffs propose that the notice and consent forms be mailed by first-class mail to all Sutherland employees as defined in the notice of motion in the last three years prior to the filing of the complaint.  Because the statute of limitations is daily destroying the injured employees' ability to collect damages, plaintiffs also request that defendants post the notice prominently on bulletin boards and provide e-mail addresses of current and former employees and help facilitate the notice being sent electronically to such employees.  Courts have long required that notice be posted at company facilities, in addition to being mailed to employees' homes.  *See e.g., Frank*, 88 F.R.D. at 679; *Kane v. Gage Merchandising Servs., Inc.*, 138 F. Supp.2d 212, 216 (requiring the provision of employee's e-mail address).

It is true that plaintiffs' counsel can take steps in addition to the court-approved notice to inform plaintiffs of their rights.  *See, Shapero v. Kentucky Bar Assoc.*, 486 U.S. 466 (1988).  However, as courts have repeatedly held, the best way to insure that employees' rights do not continue to "die daily" is for

this Court to approve notice to the employees; order its expedited dissemination; and forbid any future retaliation.

## II.   SUTHERLAND'S POLICY AND PRACTICES CONCERNING WAGE AND HOUR PAYMENTS UNDER THE FLSA WERE WILLFUL.

The wage and hour violations described above are willful violations of the FLSA.  A "willful" violation extends the FLSA's statue of limitations to three years and imposes liquated damages doubling the underlying liability.  29 U.S.C. § 216(b).  The Second Circuit requires that the employer carry the burden to prove it did not act willfully.  An employer's action is willful if the employer "failed to take any steps to determine the legality of its practices."  A finding of "willfulness is the norm, [not] the exception...."  *Brock v. Wilamowsky*, 833 F.2d 11, 19-20 (2d Cir. 1987)(*citing Walton v. United Consumer Club, Inc.*, 786 F.2d 303, 310 (7th Cir. 1986)).

In this case, Sutherland knew its policy of not paying statutory overtime was illegal. Sutherland systematically failed to track all hours worked by its employees by using at least the three company-wide policies referenced above.

## CONCLUSION

For the forgoing reasons, plaintiffs respectfully request that this Court issue an Order:

1.    requiring the issuance of an expedited notice to all current and former hourly employees of Sutherland who defense counsel, as an officer of this Court, has determined worked for Sutherland since October 11, 2002;

2.    requiring the provision to plaintiffs' counsel of a list both electronically (in an Excel spreadsheet with each item of the employee's name and address designated as a separate field) and by hard copy, of all individuals who meet the above class descriptions, including their current or last known address, phone number and e-mail address within 15 days of the issuance of the order;

4.    requiring defendants to post notices and opt-in forms in a conspicuous place (such as break rooms or other such locations) at defendants' location for a period of 90 days where employees can see such notices;

5.    requiring defendants to e-mail such notices to employees;

6.      requiring defendants to publicize such notice three times in defendants' employee newsletter or other employee communications; and

7.      for such other relief as this Court deems just and proper.

Dated: November 22, 2006

**STANLEY J. MATUSZ, ESQ.**

By:         /s/Stanley J. Matusz
            Stanley J. Matusz, Esq.
             *Attorneys for Plaintiffs*
            161 Rutgers Street
            Rochester, New York 14607
            Telephone:  (585) 271-5460
            smatusz@rochester.rr.com